Docket No. 2025-1889

*In the*

# United States Court of Appeals

*For the*

# Federal Circuit

COZY COMFORT COMPANY LLC,

*Plaintiff-Appellant,*

v.

UNITED STATES,

*Defendant-Appellee.*

*Appeal from the United States Court of International Trade
Case No. 1:22-cv-00173-SAV - Hon. Stephen A Vaden, Judge*

**APPELLANT'S REPLY BRIEF**

Christopher J. Duncan
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Phone: (213) 689-5132
chris.duncan@squirepb.com

Keith Bradley
SQUIRE PATTON BOGGS (US) LLP
717 17th Street, Suite 1825
Denver, CO 80202
Phone: (303) 830-1776
keith.bradley@squirepb.com

*Attorneys for Appellant Cozy Comfort Company LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2025-1889

**Short Case Caption** Cozy Comfort Company LLC v. U.S.

**Filing Party/Entity** Cozy Comfort Company LLC, Plaintiff-Appellant

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/09/2026

Signature: /s/ Christopher J. Duncan

Name: Christopher J. Duncan, Esq.

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Cozy Comfort Company LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable  ☐ Additional pages attached

| | | |
|---|---|---|
| See Entries of Appearance | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable  ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

|      |                                                                                   | Page |
| ---- | --------------------------------------------------------------------------------- | ---- |
| I.   | The CIT Erred Because The Comfy® is Not a Pullover of Heading 6110.               | 2    |
| II.  | The CIT Erred Because The Comfy® is not Wearing Apparel.                          | 6    |
| III. | The CIT Erred Because The Comfy® is a Blanket.                                    | 9    |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstar Marketing Group, LLC v. United States*,
    No. 13–00395 (CIT, July 28, 2016)...................................................................10

*Allstar Mktg. Grp., LLC v. United States*,
    211 F. Supp. 3d 1319 (Ct. Int'l Trade 2017)..........................................1, 8, 9, 10

*Jarvis Clark Co. v. United States*,
    733 F.2d 873 (Fed. Cir. 1984) ............................................................................2

*Rubie's Costume Co. v. United States*,
    337 F.3d 1350 (Fed. Cir. 2003) (*Rubies I*) .....................................................6, 7

*Rubies Costume Co. v. United States*,
    922 F.3d 1337 (Fed. Cir. 2019) (*Rubies II*) .........................................................4

*South Corp. v. United States*,
    690 F.2d 1368 (Fed. Cir. 1982) ..........................................................................3

*United States v. Pharmacia Fine Chemicals, Inc.*,
    463 F.2d 1370 (C.C.P.A. 1972) ..........................................................................3

*York Prods., Inc. v. Cent. Tractor Farm & Fam. Ctr.*,
    99 F.3d 1568 (Fed. Cir. 1996) ............................................................................5

In its opposition brief, the government either concedes, does not dispute, or misses the point of, Cozy's key arguments on appeal that the CIT committed reversible error. First, the government does not dispute Cozy's claims that the CIT misinterpreted *Rubies II* because the government's designated Customs witness admitted at trial that, contrary to the CIT's decision, unlike pullovers, Customs' official position is that all articles such as The Comfy® that have a sherpa lining are categorically excluded from heading 6110, and concedes that the CIT did not follow binding precedent by failing to consider, much less afford *Skidmore* deference to, Customs' consistent, well-reasoned, and longstanding position that the CIT erred (Blue Br. at 16-19).

Second, the government tacitly quibbles with Cozy's discussion of *Arnold* but does not engage with the central claim that the CIT misinterpreted the *Arnold* framework because, The Comfy®, like the Snuggie®, is not ordinarily worn as a type of clothing.

Finally, the government does not address Cozy's claim that the CIT misinterpreted *Allstar* because, contrary to the CIT's decision, The Comfy®, like the Snuggie®, meets the definition of blanket of heading 6301, and is a blanket under this Court's *GRK Canada* "use factors," in that it is a piece of sherpa/microfleece fabric that is designed, intended to be used, and marketed, as a warming blanket.

Given the government's concessions, the erroneousness of the CIT's classification decision is manifest, and, in this *de novo* proceeding, this Court may then determine The Comfy®'s proper classification in a different heading. *See Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). Here, the government does not dispute that if The Comfy® is not classifiable in heading 6110 it is potentially classifiable in two basket provisions, headings 6114 and 6307. Red Br. at 17. Cozy contends it is classified as a blanket of heading 6301 because this heading is more specific than either heading 6114 or 6307.

I. **The CIT Erred Because The Comfy® is Not a Pullover of Heading 6110.**

The government agrees that this Court's legal standard in *Rubies II* sets forth the essential characteristics for classification in heading 6110 and that one of the characteristics is the article does not protect from extreme cold. Red Br. at 21. But the government, like the CIT, misstates what determines this characteristic of an article. In this *de novo* proceeding, this Court is considering whether the CIT committed reversible error in interpreting this criterion of the *Rubies II* standard. The government's own witness admits that the CIT did just that by interpreting this *Rubies II* criterion directly contrary to Customs' longstanding position.

The government's only Customs trial witness, National Import Specialist Renee Orsat, who is Customs' top official and foremost expert on HTSUS Chapters 61 and 63, admitted under oath at trial that in applying the *Rubies II* standard,

2

Customs' official published position is that <u>all articles</u> with a sherpa lining designed to provide extra warmth like The Comfy® are excluded from classification in heading 6110 because of this cold weather protection physical characteristic, <u>not</u> because of demonstrated capacity to withstand certain temperatures as the CIT held. Blue Br. at 16-19. This admission is consistent with Customs' longstanding position that "sherpa knit pile fabric," the same fabric used to construct an insulating layer for The Comfy®, by its very nature, is "intended for protection against the cold and is, therefore, more specifically associated with the blankets of heading 6301, HTSUS." *See* N318556 (April 12, 2021).

The government does not contest, rebut, or even discuss Customs Specialist Orsat's admission, so this Court accepts the underlying statement as proven. *Cf. United States v. Pharmacia Fine Chemicals, Inc.*, 463 F.2d 1370, 1374 (C.C.P.A. 1972) (accepting undisputed testimony as true).[1] This Customs admission, which was not rebutted and is correct, should settle the matter in Cozy's favor. Instead, in defending the CIT's flawed conclusion, the government insists, contrary to Customs policy, that whether an article protects from extreme cold is to be assessed by testing the item, perhaps in an environmental chamber with thermometers on each side, a method of analysis flatly inconsistent with the analysis mandated by this Circuit for

---

[1] Decisions from the CCPA are binding. *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982).

an *eo nomine* tariff provision such as heading 6110. The government's misreading of *Rubies II*, which the CIT erroneously adopted, is contrary to: (1) the language of *Rubies II* itself, which expressly provides that its standard is comprised of the "essential characteristics" (*i.e.*, physical features) of the exemplars named in the heading, *Rubies Costume Co. v. United States*, 922 F.3d 1337, 1346 (Fed. Cir. 2019) (*Rubies II*); (2) the HTSUS, which differentiates articles based on whether the article is constructed with "insulation for cold weather protection"; and (3) the Explanatory Notes (ENs) to heading 6110, which disqualify a vest from classification in heading 6110 based solely on the presence of padding fabric for protection from the elements.[2] Blue Br. at 32-36.

Neither the government nor the CIT cite any legal support whatsoever for their novel contrary proposition used for the first time ever by the CIT that the *Rubies II* protection from cold weather criterion is based not on essential characteristics but instead on measurable performance at certain temperatures assuming certain dynamic exposure conditions (such as an open bottom for a user who is not seated). Red Br. at 23. An obvious problem with this new, subjective test is it permits a motivated entity to fashion certain conditions such that a particular article is sure to

---

[2] The government argues the ENs do not apply here because they only discuss padded vests. Red Br. at 25. But this entirely misses the point. The ENs are relevant because they exclude an article from heading 6110 based solely on the presence of an insulating layer of fabric padding, not because of demonstrated effectiveness in certain use conditions. This directly supports Cozy's and Customs' position that articles are excluded from heading 6110 based solely on the presence of a sherpa or other insulating fabric design feature.

4

fail, which is what occurred here with the government's witness Ms. Ferro's unscientific and irrelevant water test, which the CIT heavily relied upon even though it indisputably does not meet *Daubert*. Accordingly, the CIT's conclusion that a heretofore unknown *Daubert*-lite field test of every article's demonstrated capacity to sustain certain temperatures, in certain undetermined use conditions, is required by this Court to satisfy *Rubies II*, must be erroneous.

Having failed to contest its own witness's admission that, according to Customs, the CIT interprets *Rubies II* erroneously, the government urges this Court to avoid considering whether the CIT erred by not affording deference to Customs' underlying official position set forth in its Informed Compliance Publication (ICP) on apparel, which was recently re-issued in February 2020, well after this Court issued *Rubies II*. The government asserts Cozy did not raise this issue below. Actually, Cozy directly raised this issue at trial, entering Customs' ICP into evidence and extensively questioning Customs' heading 6110 specialist Orsat about the policy, and specifically argued in its post-trial brief that the CIT should adopt Customs' position that The Comfy® is excluded from heading 6110, the same argument it advances on appeal. Appx1964-1965. Thus, this issue is properly before this Court. *York Prods., Inc. v. Cent. Tractor Farm & Fam. Ctr.*, 99 F.3d 1568, 1571 (Fed. Cir. 1996) ("expressly rais[ing] and reserv[ing] objections" sufficient to preserve issue for appeal).

The government attempts to persuade this Court to overlook the CIT's failure to afford deference for good reason: it is unquestionably reversible error. Contrary to the government's assertion, Cozy does not argue that Customs is entitled to mandatory *Chevron* deference, but only that Customs longstanding, well-supported heading interpretation is entitled to persuasive *Skidmore* deference under binding Supreme Court and Federal Circuit precedent, which is undisputed. Blue Br. 38-40. Here, despite Cozy's repeated requests to the CIT to take Customs' official position into account in its deliberations, the CIT gave no consideration at all, much less *Skidmore* deference, to Customs admitted official public position that is directly in conflict with the government's litigation position and the CIT's legal interpretation of *Rubies II*. The CIT's omission contrary to binding precedent is reversible error.

## II. The CIT Erred Because The Comfy® is not Wearing Apparel.

If the Court concurs with Customs' official position that The Comfy® is not classifiable in heading 6110, pursuant to Chapter 63, Note 2(a), the parties agree this Court must first consider classification in other Chapter 61 headings, and, if none apply, may consider classification in Chapter 63. Red Br. at 30. Chapter 61 broadly covers knitted wearing apparel. The parties agree that *Arnold* provides the legal framework for whether an article is wearing apparel, and to be wearing apparel under *Arnold* an article must be ordinarily worn as dress, *i.e.*, recognized clothing. *Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1357 (Fed. Cir. 2003) (*Rubies I*)

(applying *Arnold*). Despite the government's protestations to the contrary, the parties also appear to agree that "ordinarily worn as dress" means worn regularly as a normal type of clothing in everyday situations. Red. Br. at 20.

Both the CIT and the government acknowledge that, unlike heading 6110 articles such as sweaters and pullovers, The Comfy® is "mainly meant for lounging" and "designed primarily for indoors." Red. Br. at 9; Appx19. Even if The Comfy® could be ostensibly worn to conduct some brief activities, such as walking the dog, checking the mail, or watching a sporting event from the stands, all situations where using a blanket for extra warmth in cold weather is common, the overwhelming evidence suggests these are, at most, occasional uses, vastly overshadowed by The Comfy®'s virtually exclusive use as a typical blanket on the couch for extra warmth on very cold days. Blue Br. at 47-50. The government does not contest Cozy's claim that, just as with the Snuggie®, as this Court will observe when it examines the sample The Comfy®, no person would consider wearing the bulky, thick, long The Comfy® to work, the gym, a restaurant, or other public locations where a person might typically wear a sweater or pullover of heading 6110, or another type of upper body clothing of Chapter 61. Blue Br. at 48. For comparison, one "wears" Halloween costumes too, and this Court has already held those are not apparel in *Rubie's I* specifically because those are worn for another purpose—celebrating the holiday in a festive manner—and so they are not a "normal article of apparel." 337 F.3d at

1358. A Halloween costume may cover intimate areas for decency, may be occasionally used in a public setting, may be robustly constructed, and may have several clothing features, but that is not why one wears a costume. The same is true for The Comfy®, which one wears solely to keep extra warm in a sedentary state. Under *Arnold*, The Comfy® is clearly <u>not</u> a "normal article of apparel."

If this Court concludes that The Comfy® is nonetheless wearing apparel, the government appears to agree that the only other Chapter 61 heading that applies is heading 6114, the basket provision for knitted garments, which is available if no more specific heading applies. Red Br. at 17. Incidentally, this is the same heading in which both Customs initially reclassified The Comfy® in 2020 and the government argued the Snuggie® should be classified in the *Allstar* case. Blue Br. at 14; *Allstar Mktg. Grp., LLC v. United States*, 211 F. Supp. 3d 1319, 1329–35 (Ct. Int'l Trade 2017). Moreover, the ENs for heading 6114 list several types of whole-body garments that share some characteristics with The Comfy®, such as cassocks, robes, and other similar articles with protective components such as padding. Accordingly, if The Comfy® is not classifiable in heading 6110 but is wearing apparel, it is classified in heading 6114, specifically, subheading 6114.30.3070, which covers other knitted women's or girls' garments made of man-made fibers.

### III. The CIT Erred Because The Comfy® is a Blanket.

If, consistent with the CIT's holding in *Allstar*, this Court concludes that The Comfy® is not wearing apparel because it is not ordinarily worn as an "identifiable clothing type," the parties agree that the Court should next consider other Chapters in HTSUS Section XI, which covers all types of textiles. *See Allstar Mktg. Grp., LLC v. United States*, 211 F. Supp. 3d 1319, 1328, 1332 (Ct. Int'l Trade 2017). Chapter 62 covers <u>woven</u> wearing apparel, so it is inapplicable because The Comfy® is <u>knitted</u> from man-made fibers, as are other earlier Chapters 50 through 60. Accordingly, the parties agree that if Chapter 61 does not apply, The Comfy® is classified in Chapter 63, the final chapter in Section XI, which covers other types of textiles not covered by prior Section XI chapters.

The government agrees that *Allstar* provides the legal standard for classifying blankets and sets forth just two essential characteristics: (a) a piece of fabric and (b) used as a covering for warmth. Red Br. at 31. Although the government contends that a blanket must cover only the front of a person and not have a closure, neither *Allstar*, nor any cited dictionary definition, include these additional limitations. Red Br. at 31. In *Allstar*, the government itself contended that the absence of a closure was not determinative because even a closure-less blanket (like the Snuggie®) can be "wrapped around the body of the wearer" and so "remain in place as an outer covering on the body despite its lack of closures and its length." ECF No. 42, Def's

9

Mem. of Law in Opp. to Pltf. MSJ at 15, 16, *Allstar Marketing Group, LLC v. United States*, No. 13–00395 (CIT, July 28, 2016). Indeed, many garments are designed without closures but are intended to be worn by draping and shaping a piece of fabric on the body—items such as a sari, hijab, or toga. Similarly, many blankets do have closures so that the blanket can wrap around both the front and back of the body. *See* N023565 (Mar. 5 2008) (A "blanket wrap" which "features several snaps" such that "it encloses the user allowing them to 'wear' the item. Although it can be worn, this wrap is not considered wearing apparel."). Thus, the absence or presence of a closure is not determinative of whether an article is a blanket.

The key takeaway is that blankets such as the Snuggie® and the Comfy® can include additional features, such as sleeves or closures, and remain blankets if the additional characteristics do not overshadow or take away from the two essential blanket characteristics: (1) made from fabric; and (2) cover for extra warmth. *See Allstar,* 211 F. Supp. 3d at 1337. The government, like the CIT, never reconciles why the Snuggie® and The Comfy® are both predominantly characterized by the essential blanket features but are somehow classified differently. In fact, The Comfy®, with its additional sherpa lining, provides significantly more warmth than the Snuggie® with its single layer of thin microfleece, so arguably meets the blanket definition even more the Snuggie®.

Notwithstanding that the heading term "Blankets" does not suggest any use and The Comfy® meets the *eo nomine* definition of a blanket, the government argues this Court's *GRK Canada* "use factors" nevertheless apply to heading 6301 because the other heading 6301 term, "traveling rugs", suggests a type of use. Red Br. at 3. If this is the case, which is dubious, it is undisputed that The Comfy® is: (1) inspired in part by a sherpa/microfleece blanket; (2) designed and intended to be a wearable blanket; (3) patented as a "whole body blanket;" (4) trademarked as a "blanket throw[], namely whole body blanket[]" (5) constructed exclusively from blanket fabrics (sherpa/microfleece); (6) marketed as a "blanket;" (7) packaged in a box as a blanket; (8) sold in the blanket sections of retail stores like Target and Amazon; (9) labeled a "blanket" by major companies like Disney and the NHL; and (10) and primarily used by the typical customer (a women) as a blanket for extra warmth from the cold. (Blue Br. 6, 53-54, 58; Red Br. at 7). Based on the forgoing, under *GRK Canada*, the unavoidable conclusion is The Comfy® is a blanket.

If this Court concludes The Comfy® is not a blanket, however, the government does not dispute that it is classifiable in heading 6307. Heading 6307 is a basket provision covering other types of textile articles not more specifically covered in Chapter 63. This is where baby swaddles and sleep sacks are classified. The specific subheading is 6307.90.9891, which covers other textiles made from man-made fibers.

11

In sum, pursuant to Customs' longstanding, consistent, well-reasoned, and well-supported official policy, the CIT erred by classifying The Comfy® as a pullover of heading 6110 despite its insulating sherpa lining, so this Court may determine the proper alternative classification. If The Comfy® is wearing apparel, it is classified as an other women's or girls' knitted garment made from man-made fibers in subheading 6114.30.3070. If The Comfy® is not wearing apparel, it is classified as a blanket made from synthetic fibers in subheading 6301.90.0010. If The Comfy® is not wearing apparel and not a blanket, it is classified as another made up textile in subheading 6307.90.9891.

Dated this 9th day of January, 2026.

By: /s/ *Christopher J. Duncan*
Christopher J. Duncan
**SQUIRE PATTON BOGGS (US) LLP**
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 689-5132
chris.duncan@squirepb.com

Keith Bradley
**SQUIRE PATTON BOGGS (US) LLP**
717 17th Street, Suite 1825
Denver, CO 80202
Telephone: (303) 830-1776
keith.bradley@squirepb.com

*Attorneys for Appellant*
*Cozy Comfort Company LLC*

FORM 19. Certificate of Compliance with Type-Volume Limitations　　　　Form 19
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2025-1889

**Short Case Caption:** Cozy Comfort Company LLC v. U.S.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __2,772__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/09/2026　　　　Signature: /s/ Christopher J. Duncan

　　　　　　　　　　　　　Name: Christopher J. Duncan

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2025-1889

**Short Case Caption** Cozy Comfort Company LLC v. U.S.

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 01/09/2026

by ☐ U.S. Mail ☐ Hand Delivery ☐ Email ☐ Facsimile
☑ Other: CM/ECF

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Beverly A. Farrell | Senior Trial Attorney, International Trade Field Office<br>Civil Division, Department of Justice<br>26 Federal Plaza—Room 346, New York, NY 10278<br>beverly.a.farrell@usdoj.gov |
| Michael A. Anderson | United States Department of Homeland Security<br>Bureau of Customs and Border Protection, Office of the Assistant Chief Counsel<br>Suite 258<br>26 Federal Plaza, New York, NY 10278<br>michael.a.anderson@cbp.dhs.gov |
| | |
| | |
| | |

☐ Additional pages attached.

Date: 01/09/2026                Signature: /s/ Christopher J. Duncan

                                Name: Christopher J. Duncan, Esq.